## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **HENRY BARROWS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:17-CV-1388-NJR** |
| **LISA GOLDMAN, JACOB WEATHERFORD, AMANDA COWAN, REVA ENGELAGE, LAKESHA HAMBY,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment (Doc. 83) filed by Defendant Jacob Weatherford and a Motion for Summary Judgment (Doc. 88) filed by Defendants Amanda Cowan, Reva Engelage, Lisa Goldman, and Lakesha Hamby.

This action is based on alleged deliberate indifference exhibited by the defendants towards suicidal behavior by Plaintiff Henry Barrows during the term of his incarceration, resulting in Barrows inflicting injuries upon himself. Barrows' initial *pro se* complaint was screened by Judge Michael Reagan on January 25, 2018, with two counts identified:

> **Count One:** Eighth Amendment deliberate indifference claim against Goldman, Weatherford, and Cowan for disregarding Plaintiff's risk of suicide on or about September 18, 2017.
>
> **Count Two:** Eighth Amendment deliberate indifference claim against Engelage and Hamby for closing Plaintiff's wound with steri strips and not referring Plaintiff for stitches.

An attorney was appointed to represent Barrows on January 17, 2019, and this case was transferred to the undersigned on March 6, 2019, following Judge Reagan's retirement

(Docs. 44, 49). Barrows then filed an amended complaint (Doc. 69), which added further factual allegations to his original complaint but did not change the two counts identified by Judge Reagan.

## FACTUAL BACKGROUND

Barrows has been incarcerated in facilities maintained by the Illinois Department of Corrections ("IDOC") since 2001 (Doc. 84 at 2). At all times relevant to this action, Barrows was incarcerated at Menard Correctional Center ("Menard") (*Id.*). Defendants Goldman, Cowan, Engelage, and Hamby were at all times relevant to the action employed by IDOC at Menard (Doc. 66 at 2). Goldman was the Mental Health Administrator at Menard, Cowan was a Mental Health Nurse at Menard, and Engelage and Hamby were nurses in the Health Care Unit at Menard (*Id.* at 2-3). Weatherford was at all times relevant to the action employed by Wexford Health Sources, Inc, a company providing contract health services to IDOC (Doc. 84 at 2). Through Wexford, Weatherford was employed as a Mental Health Practitioner at Menard (*Id.*).

Barrows was placed on 15-minute crisis watch in the Menard infirmary at the direction of Goldman on September 12, 2017, after telling staff or a desire to harm himself due to a "bogus ticket" that he received (Docs. 84-3 at 3-6, 84-4 at 1). The following day, Barrows told staff of continuing thoughts of self-harm and exacerbated existing lacerations on his arm, resulting in his placement on continuous watch (Doc. 84-3 at 3, 11-12). Barrows was downgraded to 10-minute crisis watch on September 14, 2017, after staff assessed that he was more stable (*Id.* at 13-14). On September 18, 2017, Barrows was moved from the infirmary to a crisis watch cell in the North II cell house (Doc. 84-4 at 7). On September 19, 2017, Barrows re-opened a pre-existing laceration, expressing further suicidal thoughts (*Id.*

at 24-25). A nurse who attended to Barrows contacted Goldman, who ordered continuous suicide watch (*Id.*). Barrows was brought to the infirmary that morning for treatment of his lacerations and told a nurse that he would reopen them, at which point the nurse notified Goldman, who ordered Barrows to be placed in four-point restraints in the infirmary (*Id.* at 26, 28-29). Barrows was released from his restraints the evening of September 19 after stating that he was not suicidal (*Id.* at 33). On September 20, Barrows was moved to 10 minute crisis watch, which was downgraded to 15-minute crisis watch on September 21 (Doc. 84-3 at 38-40). On September 22, Barrows was released from the infirmary and returned to North II (*Id.* at 41). Barrows was kept on 15-minute watch for the next few days and continued to express mental instability and discontent (*Id.* at 42-45).

On the morning of September 25, 2017, Barrows met with Weatherford and told him that he felt like cutting himself again, noting that he had refused his medication the night before (Doc. 84-3 at 46). Weatherford noted that Barrows should be kept on 15-minute watch (*Id.*). Weatherford later testified in his deposition that when Barrows told him he felt like cutting, he did not take it as an indication of Barrows' intent to injure himself because it did not mean that he would act on his desire to cut (Doc. 84-2 at 25-26). Weatherford noted that given the totality of the circumstances he did not believe that there was an imminent threat of Barrows cutting himself, and that he would have ordered 10-minute crisis watch if Barrows had exhibited instability and hurt himself (*Id.*).

Barrows' own recollection of this exchange differs from what is recounted by Weatherford, and he states that he asked Weatherford to put him back in four-point restraints and was told by Weatherford that he could not order restraints unless Barrows cut himself (Doc. 84-1 at 10). Weatherford disputes this, noting that he has no recollection of this

exchange, that he would have recorded in his notes if restraints were requested (Doc. 84-2 at 28). Weatherford notes that per IDOC policy, he did not have the ability to order that Barrows be placed in restraints, though Barrows notes that he did have the ability to recommend restraints to a psychiatrist, physician, or psychologist who could have given such an order (Docs. 84-6 at 2-3). Goldman testified that an inmate's request for restraints would only be one factor in determining whether restraints should be applied (Doc. 84-5 at 36).

Later that morning, at approximately 11:40 a.m. on September 25, a nurse noticed that Barrows had cut himself in two locations, resulting in wounds approximately two millimeters deep and two inches long which were bleeding profusely (Doc. 84-4 at 43). Barrows was sent to the health care unit, and subsequently was moved to Chester Memorial Hospital, where his lacerations were treated (*Id.* at 44). Upon his return, Barrows saw Cowan for a suicide potential evaluation, stating that he was not suicidal but rather had cut himself out of frustration, and Cowan noted that he had no suicidal ideation at that time (Doc. 84-3 at 47). Barrows was taken off crisis watch by Goldman due to a lack of suicidal ideation, as reported by Cowan (*Id.*). On September 26, however, Barrows was returned to crisis watch due to self-harm (Doc. 84-4 at 45-46).

Hamby and Engelage examined Barrows in the Health Care Unit, with Hamby noting that he had two new lacerations, one laceration 3 inches in length by 3 millimeters in depth and another laceration 2.5 inches in length and 2 millimeters, with no active bleeding (*Id.*). Hamby and Engelage applied steri-strips and a dry dressing (*Id.*). Barrows' recollection of this event differs, as he recalls that he was still bleeding when Hamby and Engelage treated him and that Engelage had to put pressure on one of his wounds (Doc. 88-5 at 21-22). According to Barrows, Engelage and Hamby conferred and agreed that the wound was a

"surgical wound" and that there was a risk of infection if it was not sealed with sutures, but they used only steri-strips and gauze anyway (*Id.* at 22).

According to Hamby's notes, Barrows refused to "contract for safety" and Dr. Goldman ordered that he be placed back in restraints (Doc. 88-4 at 45-46). Later on the morning of September 26, Barrows agreed not to self-harm, and Goldman ordered his restraints removed (*Id.* at 54). Barrows also reported that he had removed his sutures the night before, and a nurse applied fresh steri-strips, noting no signs of infection (*Id.*). Barrows was placed on 10-minute crisis watch, which was reduced to 15-minute crisis watch and then discontinued by agreement of Goldman and Weatherford on September 27 (Doc. 84-3 at 59-64). Barrows was seen by nurses on September 27 and 29, and on both dates nurses noted that his wounds were clean and healing well, with no sign of infection.

Barrows has stated that he has suffered no lasting effects from his injuries (Doc. 88-5 at 25).

### LEGAL STANDARD – SUMMARY JUDGMENT

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317,232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888

(1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence[.]" *Reid v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir. 2014) (*quoting Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005)).

## APPLICABLE LAW

In order to succeed in a claim for deliberate indifference based on inadequate medical treatment, a plaintiff must show (1) that the plaintiff suffered an objectively serious risk of harm and (2) that the defendant acted with a subjectively culpable state of mind in acting or failing to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

For a medical need to be deemed to present an objectively serious risk of harm, the need must be one that has been diagnosed by a physician, or one that is so obvious that even a lay person could recognize the necessity of medical attention. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). In the past, courts have held mental illness and the possibility of suicide to present a serious and objective risk of harm. *Collins v. Seeman*, 462 F.3d 757, 760–61 (7th Cir. 2006).

To establish that a defendant was deliberately indifferent, a plaintiff must show that officials were aware of the facts from which an inference could be drawn that a serious risk to inmate health exists, and they must also draw the relevant inference. *Farmer*, 511 U.S. at 837. This requires actual knowledge; it is not enough to show that prison officials should have

been aware of the risk of harm. *Collins v. Seeman*, 462 F.3d 757, 761 (7ᵗʰ Cir. 2006). Knowledge of the risk of harm is usually proven by showing that the inmate complained to prison officials about the conditions in question. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). A plaintiff need not show that an inmate's complaints and requests for assistance were literally ignored, but only that the officials' responses "were so plainly inappropriate as to permit the inference that the defendant intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). An inmate need not present direct evidence of the official's state of mind, however, and circumstantial evidence can be used to infer an official's knowledge and intent. *Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 196 (7th Cir. 2011) (citing *Farmer*, 511 U.S. at 842).

Even if a defendant did disregard certain medical needs, this would only rise to the level of deliberate indifference and result in a constitutional violation if such disregard was "objectively, sufficiently serious" to constitute the "denial of minimal civilized measures of life's necessities." *Langston v. Peters*, 100 F.3d 1234, 1240 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In assessing this, the Court should look to factors including whether any harm actually resulted from the lack of medical attention. *Thomas v. Walton*, 461 F. Supp. 2d 786, 793 (S.D. Ill. 2006).

### ANALYSIS

## I.   Count I: Deliberate Indifference to Risk of Suicide against Weatherford, Goldman and Cowan

It is undisputed that Barrows' mental health issues did present a serious medical problem and that Weatherford, Goldman, and Cowan all had some level of awareness of

these problems. But Barrows has failed to present facts indicating that these defendants were indifferent to his mental health issues.

The factual record shows that Weatherford, Goldman, and Cowan both responded adequately to Barrows' evolving situation, analyzing his mental state at intervals and adjusting his watch status according to their observations and professional opinions. They followed up as his status changed, speaking with Barrows on multiple occasions as well as reviewing notes from other practitioners.

Without exhaustively reciting the facts of this case, none of the evidence presented shows that any of these defendants ever ignored the medical needs of Barrow. While their assessment of his mental state may not always have been perfect, they appear to have done the best that they could reasonably have done based on their observations of Barrows and their professional training. They are not expected to do any more than this, and there certainly is no indication that any of these individuals deliberately ignored Barrows' mental health needs or risk of suicide. Summary judgment is warranted for Weatherford, Goldman, and Cowan.

## II.   Count Two: Deliberate Indifference to Medical Need Against Engelage and Hamby.

The Court's discussion of Count Two against Engelage and Hamby will be brief. Without needing to delve into the dispute over what Engelage and Hamby may have said at the time that they examined Barrows and applied seri-strips, it is sufficient to observe that Barrows' self-inflicted wounds healed rapidly and uneventfully, without any complications or lasting effects. Accordingly, Barrows cannot point to any harm that arose from the alleged

lack of medical attention, and his claim fails. Summary judgment is warranted for Engelage and Hamby.

CONCLUSION

For the reasons set forth above, the Court **GRANTS** summary judgment to all Defendants and **DISMISSES** this action **with prejudice**. The Court **DIRECTS** the Clerk of Court to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   July 10, 2020**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**